Civil Action No. 06-247 JJF

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PUBLIC UTILITY DISTRICT NO. 1 OF CLARK COUNTY d/b/a Clark
Public Utilities,

Appellant,

v.

KAISER ALUMINUM & CHEMICAL CORPORATION, et al.,

Appellees.

Bankruptcy No. 02-10429 (JKF)

IN RE: KAISER ALUMINUM CORPORATION, et al.

Debtors.

On Appeal From The United States Bankruptcy Court
For The District Of Delaware

## REPLY BRIEF OF APPELLANT

| | |
|---|---|
| DUANE MORRIS<br>Frederick B. Rosner, Esq.<br>(ID No. 3995)<br>1100 North Market Street, Suite 1200<br>Wilmington, DE 19801-1246<br>Tel.: (302) 657-4900<br>Fax: (302) 657-4901 | BRACEWELL & GIULIANI LLP<br>William A. Wood, III, Esq.<br>(Texas Bar ID 21916050)<br>Warren W. Harris, Esq.<br>(Texas Bar ID 09108080)<br>Tracy C. Temple, Esq.<br>(Texas Bar ID 00793446)<br>711 Louisiana Street, Suite 2300<br>Houston, Texas 77002-2781<br>Tel.: (713) 223-2300<br>Fax: (713) 221-1212 |
| BRACEWELL & GIULIANI LLP<br>George H. Williams, Esq.<br>2000 K Street, N.W., Suite 500<br>Washington, DC 20006<br>Tel.: (202) 828-5800<br>Fax: (202) 223-1225 | |

*Counsel to Public Utility District No. 1 of Clark County*
*d/b/a Clark Public Utilities*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

SUMMARY OF THE ARGUMENT ............................................................................................ 1

ARGUMENT ................................................................................................................................ 2

I.    The Bankruptcy Court Erred in Finding That It Had Jurisdiction Over Clark's Claims
      Because Exclusive Jurisdiction of the Claims Lies With FERC ......................................... 2

      A.    Subject matter jurisdiction is a threshold requirement ............................................ 3

      B.    The core or non-core nature of a proceeding refers to the bankruptcy
            court's ability to issue a final judgment and not to whether the court has
            subject matter jurisdiction ....................................................................................... 3

      C.    *In re Enron Corp.* is inapposite ................................................................................ 5

II.   The Bankruptcy Court Erred in Granting Summary Judgment Because Clark's Claims
      are Not Barred by Res Judicata ......................................................................................... 8

      A.    The unauthorized sale claim is not barred ............................................................... 8

      B.    Kaiser's new argument regarding the unjust and unreasonable rate claim
            must be rejected ..................................................................................................... 12

            1.    The bankruptcy court based its decision on Kaiser's res judicata
                  argument ....................................................................................................... 12

            2.    If the bankruptcy court denied the claim based on its alleged contingent
                  nature, the bankruptcy court erred .............................................................. 14

CONCLUSION ........................................................................................................................... 15

# TABLE OF AUTHORITIES

*Cases*

*Avellino & Bienes v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.),*
    744 F.2d 332 (3d Cir. 1984)................................................................................14

*Cal. Dept. of Water Res. v Calpine Corp. (In re Calpine Corp.),*
    337 B.R. 27 (S.D.N.Y. 2006).................................................................................4

*California v. Enron Corp. (In re Enron Corp.),*
    No. 05 Civ. 4079 (GBD), 2005 WL. 1185804 (S.D.N.Y. May 18, 2005).....................5, 6

*Carolina Power & Light Co.,* 87 F.E.R.C. ¶ 61,083 (1999) ................................................8

*Clark-Cowlitz Joint Operating Agency v. FERC,* 826 F.2d 1074 (D.C. Cir. 1987) .....................10

*Cohen v. Superior Oil Corp.,* 90 F.2d 810 (3d Cir. 1937) ...................................................9

*Enron Power Mktg., Inc. v Cal. Power Exch. Corp. (In re Enron Corp.) ("EPMI"),*
    No. 04 Civ. 8177(RCC), 2004 WL. 2711101 (S.D.N.Y. Nov. 23, 2004)...................4, 6, 7

*Mazzeo v. United States (In re Mazzeo),* 131 F.3d 295 (2d Cir. 1997)........................................14

*Protocomm Corp. v. Novell, Inc.,*
    Case No. 94-7774, 1998 WL. 351605 (E.D. Pa. June 30, 1998) ......................................11

*Stanger v. Athos Steel Aluminum, Inc. (In re Athos Steel and Aluminum, Inc.),*
    71 B.R. 525 (Bankr. E.D. Pa. 1987) ................................................................3

*Williams Nat. Gas Co.,* 83 F.E.R.C. ¶ 63,015 (1998) ....................................................9

*Statutes*

11 U.S.C. §§ 157(b)(2) .......................................................................................4

16 U.S.C. § 824................................................................................................7

28 U.S.C. § 157.............................................................................................3, 7

28 U.S.C. § 1334..............................................................................................3

*Miscellaneous*

RESTATEMENT (SECOND) OF JUDGMENTS Ch. 1 ................................................................9

RESTATEMENT (SECOND) OF JUDGMENTS § 83 cmt. a (1982) ..............................................9

Public Utility District No. 1 of Clark County d/b/a Clark Public Utilities files its Reply Brief of Appellant. Appellant Public Utility District No. 1 of Clark County d/b/a Clark Public Utilities will be referred to as Clark. Appellee Kaiser Aluminum and Chemical Corporation will be referred to as Kaiser.

## SUMMARY OF THE ARGUMENT

The bankruptcy court acted without subject matter jurisdiction in granting summary judgment and disallowing Clark's unauthorized sale and unjust and unreasonable rate claims. FERC is the entity with exclusive jurisdiction over Clark's claims. Kaiser argues in its brief that the bankruptcy court had jurisdiction because the disallowance of Clark's claims is a core proceeding. Kaiser's argument misses the mark; whether the disallowance of Clark's claims is a core or non-core proceeding is not dispositive of whether the bankruptcy court had subject matter jurisdiction. Only if it is first established that the bankruptcy court had subject matter jurisdiction would it then determine whether the proceeding is core or non-core. In this case, the bankruptcy court simply did not have subject matter jurisdiction over Clark's claims and it thus erred in entering its Order.

The bankruptcy court also erred in granting summary judgment on grounds of res judicata. The unauthorized sale claim is not barred because there was no final judgment and because it is a claim that was not brought and could not have been brought in the Puget Sound Proceeding. Indeed, every time Clark attempted to bring the claim, Kaiser persuaded the bankruptcy court not to lift the stay, thereby preventing Clark's efforts. Even when the Puget Sound Proceeding was reopened, Kaiser and the bankruptcy court prevented Clark from having a full and fair opportunity to litigate the unauthorized sale claim. Application of res judicata principles to Clark's claim in this case is a fundamental denial of Clark's due process rights.

Kaiser's new argument that the bankruptcy court did not deny the unjust and unreasonable rate claim on the basis of res judicata, but rather simply disallowed it as a contingent claim, is refuted by its own motion for summary judgment and by the bankruptcy court's explanation of its ruling on the record. Moreover, in its brief Kaiser does not even attempt to argue that the elements of res judicata were satisfied with regard to the unjust and unreasonable rate claim, and thus Kaiser tacitly admits that res judicata should not apply. If the bankruptcy court did disallow the claim because it is allegedly contingent, it erred in doing so. Clark's claims are not contingent, they are disputed. There is no basis (under bankruptcy law or otherwise) for disallowing a claim merely because it is disputed. Therefore, the bankruptcy court's order should be reversed.

## ARGUMENT

### I.
### The Bankruptcy Court Erred in Finding That It Had Jurisdiction Over Clark's Claims Because Exclusive Jurisdiction of the Claims Lies With FERC.

The bankruptcy court erred by entering its order disallowing Clark's claims. The determinations made by the bankruptcy court in this case fall within the exclusive jurisdiction of FERC and, thus, the bankruptcy court has no jurisdiction over the claims. Kaiser does not refute that the subject matter of Clark's claims is within the exclusive jurisdiction of FERC, but claims that the bankruptcy court had jurisdiction to disallow Clark's claims because the proceeding involved a core proceeding—a proceeding to determine the allowance or disallowance of a claim. Kaiser's argument is incorrect. Whether or not the allowance or disallowance of a claim in bankruptcy would be a core proceeding, where the subject matter of that claim is within the exclusive jurisdiction of a federal regulatory agency, the bankruptcy court cannot make the determinations necessary to disallow such a claim. The fact that a proceeding of a particular

type is a core proceeding does not mean that the bankruptcy court automatically has subject matter jurisdiction to adjudicate the matter presented in that proceeding.

A.    *Subject matter jurisdiction is a threshold requirement.*

The jurisdiction of a bankruptcy court is granted through the district court that refers the bankruptcy case to the bankruptcy court. 28 U.S.C. § 1334; 28 U.S.C. § 157. The district court cannot grant jurisdiction that the district court itself does not have. Therefore, if the district court would not have jurisdiction over a particular claim, the bankruptcy court does not have jurisdiction either. Jurisdiction in the bankruptcy court is determined through a two step process. The threshold determination is whether the bankruptcy court has subject matter jurisdiction over the claims asserted. *Stanger v. Athos Steel Aluminum, Inc. (In re Athos Steel and Aluminum, Inc.)*, 71 B.R. 525, 531 (Bankr. E.D. Pa. 1987). Only after the court has addressed the threshold issue of whether it has subject matter jurisdiction does the court then determine if the proceeding is a core or non-core matter. *Id.* The fact that the *proceeding* is a core proceeding does not necessarily mean that the court has subject matter jurisdiction over the claim. For example, 28 U.S.C. § 157(b)(5) specifically excepts personal injury tort and wrongful death claims from bankruptcy court jurisdiction even though the allowance or disallowance of those claims would otherwise be a core proceeding.

B.    *The core or non-core nature of a proceeding refers to the bankruptcy court's ability to issue a final judgment and not to whether the court has subject matter jurisdiction.*

The core or non-core nature of a proceeding merely determines whether the bankruptcy court may issue a final judgment on the matter or must submit its findings to the district court for final determination. 28 U.S.C. § 157(c). The bankruptcy court may hear non-core matters, but may not issue a final judgment on such matters. 28 U.S.C. § 157(c). The core or non core nature of a proceeding does not and cannot grant the bankruptcy court jurisdiction over claims over

which the bankruptcy court would not have subject matter jurisdiction. *See Cal. Dept. of Water Res. v Calpine Corp. (In re Calpine Corp.)*, 337 B.R. 27, 38 (S.D.N.Y. 2006), *appeal docketed*, No. 06-0480-bk (2d Cir. Feb. 1, 2006) (holding that FERC had exclusive jurisdiction over the contracts subject to the debtors' motion to reject although the motion to reject is a core proceeding); *Enron Power Mktg., Inc. v Cal. Power Exch. Corp.*, No. 04 Civ. 8177(RCC), 2004 WL 2711101 at *4 (S.D.N.Y. Nov. 23, 2004) (hereafter referred to as "EPMI") (holding that the bankruptcy court did not have authority to adjudicate certain claims objections because the determinations involved in the core proceeding involved the substantial and material consideration of federal law outside the Bankruptcy Code).

*In re Calpine* demonstrates that the fact that a particular proceeding is a core proceeding does not necessarily mean that the bankruptcy court has jurisdiction over the issues presented. *See generally In re Calpine*, 337 B.R. 27 (holding that the bankruptcy and district courts lacked subject matter jurisdiction over contracts subject to the debtors' motion to reject certain contracts). In *In re Calpine*, the debtors moved to reject certain filed rate energy contracts. *Id.* at 30-31. A proceeding by a debtor in bankruptcy to assume or reject executory contracts is a core proceeding. *See* 11 U.S.C. §§ 157(b)(2). Notwithstanding the core nature of the proceeding, the *In re Calpine* court held that the bankruptcy court and the district court lacked subject matter jurisdiction over the contracts at issue and, thus, did not have jurisdiction to make the determinations raised by the debtors' motion to reject the filed rate contracts. *In re Calpine*, 337 B.R. at 39. Similarly, the bankruptcy court in this case does not have jurisdiction to determine the issues raised by Clark's claims and, thus, lacks jurisdiction to make the determinations necessary to adjudicate Kaiser's motion, even though Kaiser's motion would otherwise be a core proceeding.

C.     **In re Enron Corp.** *is inapposite.*

Kaiser relies heavily on *California v. Enron Corp. (In re Enron Corp.)*, No. 05 Civ. 4079 (GBD), 2005 WL 1185804 (S.D.N.Y. May 18, 2005) for the assertion that the bankruptcy court in this case has jurisdiction to determine the issues presented by Kaiser's objections to Clark's claims. (Br. of Appellees at 20). Kaiser's reliance on *In re Enron* is misplaced for two reasons.

First, the court's holding in *In re Enron* was that the claims involved did not require substantial and material review and interpretation of the FPA. *In re Enron*, 2005 WL 1185804 at *2. Because the claims asserted by the defendants in *In re Enron* were not within the exclusive jurisdiction of FERC, the holding of that case is inapposite to the instant case where Clark's claims are within the exclusive jurisdiction of FERC.

The claims asserted by the defendants in *In re Enron* included: (i) claims for refunds and amounts based upon violations of the FPA that are under consideration by FERC; (ii) claims for violation of various state and federal laws premised on Defendants' alleged gaming and manipulation of the electric, power and natural gas markets; and (iii) claims based on pre-petition meter data errors. *Id.* at *1. The FPA violations and jurisdictional conflicts raised by the defendants in *In re Enron* were based on certain tariffs established by FERC. The *In re Enron* Court held that these claims did not present the bankruptcy court with a jurisdictional conflict between FERC and the bankruptcy court because the determinations necessary to adjudicate the objections did not require substantial and material interpretation of non-bankruptcy law. *Id.* Unlike the claims presented in *In re Enron*, the determinations at issue in this case require substantial review and interpretation of the FPA as established by Clark.

The objections to the claims addressed in *In re Enron* are also wholly different than the bases for Kaiser's objection to Clark's claims. Enron objected to the defendants' claims on the following bases: (i) that Enron had no role in the activities giving rise to the claims; (ii) with

respect to the refund claims, that the defendants were not in privity with Enron and no relationship existed between Enron and the defendants with respect to the purchase or sale of wholesale power; (iii) that the claims were duplicative of each other; (iv) that the defendants' claims under various state laws were preempted by applicable federal law; and (v) that the claims were improperly classified. *See* Debtors' Memorandum of Law in Opposition to Motion by Creditors Bill Lockyer, *et al.* to Withdraw the Reference, No. 05 Civ. 04079(GBD) at Docket No. 6 (filed April 26, 2005). None of those disputes necessarily involve interpretations of the Federal Power Act or matters under the FPA left to FERCs exclusive jurisdiction. Here, in contrast, the matters at issue involve (1) whether the Kaiser-Clark sale price was just and reasonable under the FPA, and (2) whether the Kaiser-Clark sale was authorized under the FPA. Both are matters exclusively within FERC domain. *In re Enron* is, thus, inapposite to the instant case.

Second, the same court that decided *In re Enron* has recognized that a bankruptcy court cannot adjudicate objections to claims where the claims require "substantial and material consideration of federal law beyond Title 11" to make necessary determinations, such as whether the claims fall within the exclusive jurisdiction of FERC. *EPMI*, 2004 WL 2711101 at *4. In *EPMI*, the defendant filed a proof of claim asserting a claim against certain collateral held by the defendant pursuant to tariff and rate schedules established by FERC. *Id.* at *1. The debtor filed an adversary complaint and objection to the claim for the purpose of objecting to the defendant's claim and seeking a judgment for turnover of the collateral, both core proceedings. *Id.* The defendant moved to withdraw the reference on the ground that jurisdiction over the claims objected to and involved in the adversary proceeding lies exclusively with FERC because determination of the value of the claims is dependant "on the tariff-and-rate schedule approved

by FERC pursuant to FERC's exclusive jurisdiction under the Federal Power Act." *Id.* In determining that the reference should be withdrawn as to the core proceedings presented under the mandatory withdrawal provisions of 28 U.S.C. § 157(d), the *EPMI* Court noted the conflict between FERC's jurisdiction and that of the bankruptcy court.

> As a threshold issue, it must be determined who has jurisdiction over the collateral at issue.  Such a determination requires an examination of the interrelation between the bankruptcy and federal energy regulatory laws and the spheres of authority that enforce those laws.  Under the Federal Power Act, the FERC has the exclusive authority to pass upon the reasonableness of the structure, terms, and conditions pertaining to the sale and distribution of wholesale electric rates, *see* 16 U.S.C. §§ 824, 824d and 824e, but Enron casts its requested relief in non-regulatory terms and asserts that the Bankruptcy Court is confronted with a simple bankruptcy case-nothing more than a contractual dispute between the parties raising security-interest issues--such that the Bankruptcy Court can make the determination of whether to turn over the proceeds "under the provisions of the Bankruptcy Code governing secured claims, applicable nonbankruptcy law, and the terms of [Enron's] contractual agreements with [CalPX]."
>
> . . . .
>
> The Bankruptcy Court cannot adjudicate this objection and determine whether the letter-of-credit proceeds must be turned over to Enron's bankruptcy estate without substantial and material consideration of federal law beyond Title 11 to determine, at the outset, whether the funds at issue fall within the FERC's exclusive jurisdiction or whether this is a garden-variety bankruptcy case. Accordingly, Defendants' motion to withdraw the reference is granted on mandatory-withdrawal grounds so that this Court may resolve the threshold jurisdictional issues in accordance with applicable non-bankruptcy federal law.

*Id.*

The instant case is analogous to the *EPMI* case in almost all respects.  Clark filed proofs of claim, the substance of which is within the exclusive jurisdiction of FERC.  The debtors moved to disallow the claims of Clark on the basis that these claims were precluded by res judicata and asserting that this is just a simple bankruptcy matter.  Clark moved to withdraw the reference because the bankruptcy court cannot decide the issues presented in this proceeding without substantial and material consideration and interpretation of the FPA.  Moreover, all of

Clark's claims are firmly within the exclusive jurisdiction of FERC, unlike those presented in *In re Enron*. Accordingly, the bankruptcy court erred in disallowing claims over which it did not have jurisdiction and which were subject to mandatory withdrawal of the reference

## II.
### The Bankruptcy Court Erred in Granting Summary Judgment Because Clark's Claims are Not Barred by Res Judicata

The bankruptcy court erred in granting summary judgment on Clark's claims because Kaiser failed to establish as a matter of law the elements of res judicata. The elements of res judicata are not established with respect to both the unauthorized sale claim and the unjust and unreasonable rate claim. The bankruptcy court's order must be reversed.

A.    *The unauthorized sale claim is not barred.*

Clark established that it is not barred, under the doctrine of res judicata, from asserting its unauthorized sale claim because the Puget Sound Proceeding involved a different cause of action, there has been no final judgment on the merits of the claim, and because the claim could not have been brought in the Puget Sound Proceeding. (Br. of Appellant at 20-26). Kaiser's arguments to the contrary are unpersuasive for three reasons.

First, Kaiser argues that the unauthorized sale claim is not a different cause of action, but merely a different theory of recovery for the same course of allegedly wrongful conduct. (Br. of Appellees at 28). Kaiser, however, does not even address the authority cited by Clark in its brief setting forth how FERC considers an unauthorized sale claim to be a different claim and a different injury than an unreasonable rate claim.[1] (*See* Br. of Appellant at 22-23 (citing *Carolina*

---

[1]    Kaiser is incorrect in its assertion that Clark "effectively concedes" that the third element of the *Lake Murray Docks* test is satisfied. (Br. of Appellees at 28-29). Clark does not concede that the third element (or elements 1 and 2 for that matter) is satisfied. In fact, Clark established that the two claims involve different rights—one is the right of Clark not to suffer unjust and unreasonable rates and the other is the right of FERC to enforce its regulations. (*See* Br. of Appellant at 23).

*Power & Light Co.*, 87 FERC ¶ 61,083 at 61,356 (1999)). The unauthorized sale claim involves different statutory obligations and different injuries than the unreasonable rate claim and is, therefore, a different cause of action.

Second, Kaiser incorrectly argues that the June 25, 2001 FERC decision in the Puget Sound Proceeding was a final judgment on the merits. It is undisputed that the FERC decision is on appeal to the Ninth Circuit. In a footnote, Kaiser contends that the existence of an appeal does not prevent application of res judicata, citing a non-administrative agency case, *Cohen v. Superior Oil Corp.*, 90 F.2d 810, 811-12 (3d Cir. 1937). (Br. of Appellees at 31 n.12). Whether the existence of an appeal affects the application of res judicata in the context of an administrative decision depends on the finality of the agency order. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 83 cmt. a (1982) ("The rule of this Section applies as between successive actions or proceedings. It does not apply when a determination of an administrative tribunal is being subjected to direct judicial review."). As explained in *Williams Nat. Gas Co.*, an administrative agency order is given preclusive effect only when the agency has had "the final word," such as when there has been no appeal. 83 FERC ¶ 63,015 at 65,116 n.13 (1998). The FERC decision is on appeal, and thus the agency has not had "the final word." Because there has been no final judgment on the merits, application of res judicata to bar Clark's claim is inapplicable.

Third, the unauthorized sale claim was not brought and could not have been brought in the Puget Sound Proceeding. Essential to the doctrine of claim preclusion is the notion that the party had a full and fair opportunity to litigate the claim that is sought to be precluded. *See* RESTATEMENT (SECOND) OF JUDGMENTS Ch. 1, Intro. (1982) ("The principle underlying the rule of claim preclusion is that a party who once has had a chance to litigate a claim before an

appropriate tribunal usually ought not to have another chance to do so. . . .The "chance" to litigate is not simply some unspecified opportunity for disputation over legal rights; it is the opportunity to submit a dispute over legal rights to a tribunal legally empowered to decide it according to definite procedural rules.  Any less formal process would be regarded as either legally inconclusive—that is, not a serious and genuine "chance" to litigate—or fundamentally unfair.").  Indeed, due process concerns require that a party be given a full and fair opportunity to litigate a claim before it can be precluded under res judicata.  *See id.* ("The requirements of Due Process prescribe the outer constitutional limits of a procedural system that may yield a conclusive product, *i.e.*, one entitled to res judicata effects.").  In this case, Clark did not have a full and fair opportunity to litigate the unauthorized sale claim because every time it attempted to raise the claim, Kaiser and the bankruptcy court prevented it from doing so.  (*See* Docket Nos. 2616, 8017, Ex. 7, 8018 at 4).  As a result, res judicata cannot apply.  *See Clark-Cowlitz Joint Operating Agency v. FERC*, 826 F.2d 1074, 1079 (D.C. Cir. 1987) ("In the case at hand, the Eleventh Circuit neither addressed nor had the opportunity to address the specific issue (or claim) before us. . . .").[2]

Without citing any authority, Kaiser argues that Clark should have brought the unauthorized sale claim before the ALJ issued its decision and before the bankruptcy stay went into effect.  (Br. of Appellees at 32).  This argument is without merit.  Clark brought the claim as soon as it became aware of it.  (Docket No. 8018 at 5).  There was no statute of limitations that required Clark to bring the claim any earlier.  Further, any failure to bring the claim before the ALJ issued her decision is irrelevant.  The Commission in fact reopened the Puget Sound

---

[2]    Contrary to Kaiser's claim, Clark does not confuse issue preclusion and claim preclusion.  (Br. of Appellees at 31).  The rule set forth in *Clark-Cowlitz* that res judicata does not apply where a tribunal had no opportunity to address a claim applies with equal force to both issue preclusion and claim preclusion.  *See Clark-Cowlitz*, 826 F.2d at 1079.

Proceeding and specifically ruled that Clark should be able to participate in the reopened proceeding. (Docket No. 8017, Ex. 8; Docket No. 8018 at 4). Nevertheless, the bankruptcy court, at Kaiser's insistence, strictly limited Clark's ability to participate in the reopened proceeding and would not allow Clark to raise the unauthorized sale claim. (*See* Docket No. 2000 at 3).

Kaiser also suggests that Clark's claim should be precluded because it did not appeal the bankruptcy court's refusal to lift the automatic stay,[3] citing the unpublished opinion in *Protocomm Corp. v. Novell, Inc.*, Case No. 94-7774, 1998 WL 351605, at *10 (E.D. Pa. June 30, 1998). (Br. of Appellees at 32-33). In addition to the fact that it lacks any precedential authority, *Protocomm Corp.* is distinguishable. In *Protocomm Corp.*, the party against whom res judicata was asserted at least had the opportunity to ask to add a claim, which request was denied. *Id.* at *2. Clark was denied the right to even ask FERC to add the unauthorized sale claim due to Kaiser's actions. Moreover, the party in *Protocomm Corp.* actually participated in the appeal of the first case and the decision in the first case was affirmed. *Id.* In this case, Clark was denied the right to appeal the FERC decision due to Kaiser's actions. Finally, there was a final judgment in *Protocomm* that was affirmed on appeal. *Id.* at *4. In this case, there has been no final judgment. In sum, the party in *Protcomm Corp.* arguably had its day in court, whereas Clark has been repeatedly denied its day in court by Kaiser's actions and the bankruptcy court's refusal to lift the automatic stay. *Protocomm Corp.* provides no support for Kaiser's argument.

---

[3] As pointed out in Clark's brief, an appeal would not have been an effective remedy from the bankruptcy court's orders because of the timing involved in FERC proceedings and because denials of motions to lift stays are generally not appealable. (*See* Br. of Appellant at 31).

B.    *Kaiser's new argument regarding the unjust and unreasonable rate claim must be rejected.*

In its Brief of Appellant, Clark showed that the unreasonable rate claim is not barred by res judicata because there was no final decision on the merits of Clark's claim and, thus, the bankruptcy court erred in disallowing that claim.    (Br. of Appellant at 27-28).    Kaiser inexplicably argues in response that it "never argued, and the bankruptcy court never held, that the Unreasonable Rate Claim was barred by <u>res judicata</u>." (Br. of Appellees at 37) (emphasis in original).    Kaiser's argument that the bankruptcy court simply disallowed the unreasonable rate claim as a contingent claim and not on the grounds of res judicata is directly refuted by Kaiser's own motion and briefing, and by the bankruptcy court's statements on the record.

1.    *The bankruptcy court based its decision on Kaiser's res judicata argument.*

Kaiser specifically argued in its motion for summary judgment that Clark's unreasonable rate claim was barred by res judicata: "The litigation of the merits of the Clark Claims ended more than two years ago, and Clark lost that litigation on the merits. As a result, principles of <u>res judicata</u> preclude **both** the Unauthorized Sale Claim **and the Unreasonable Rate Claim.**" (Docket No. 7841 at ¶ 7 (emphasis added)).    Kaiser also argued in its brief in support of its motion for summary judgment that Clark's unreasonable rate claim was decided by FERC's decision in the Puget Sound proceeding and that the decision by FERC was a final decision on the merits of the unreasonable rate claim. (Docket No. 7842 at 26-27). This follows Kaiser's argument in its Verified Motion for an Order Disallowing Claims filed by Clark Public Utilities that Kaiser had no outstanding liability with respect to *both* the claims asserted by Clark pursuant to the decision issued by FERC on June 25, 2003 in the Puget Sound proceeding.    (Docket No. 7480 at ¶ 16 (emphasis added)).    As the pleadings demonstrate, Kaiser's argument for the

disallowance of Clark's claims, including the unreasonable rate claim, was founded in the alleged res judicata effect of FERC's June 25, 2003 order in the Puget Sound proceeding.

Following Kaiser's argument, the bankruptcy court erroneously held that the unreasonable rate claim was barred by res judicata and, thus, disallowed Clark's claims:

> But right now, based on the FERC's decision, I do not see that Clark has an allowable claim. . . . The question really is Clark likely to have any reasonable success on the merits in raising that issue before the FERC, and I think the answer is no. Even if it were not bound by the *res judicata*. But I believe it is bound by *res judicata*. . . . The Debtor, however, still has objections that can be raised in that claims objection process, and **in this instance I think the Debtor has established that their *res judicata* bars that second bite at the apple**, whether it's here or before FERC.

(Docket No. 8444 at 7-8) (emphasis added)).[4]

The bankruptcy court's disallowance of Clark's unreasonable rate claim was clearly founded on res judicata and the alleged preclusive effect of FERC's ruling in the Puget Sound proceeding. As shown in detail in Clark's Brief of Appellant, the bankruptcy court erred in granting the summary judgment and disallowing Clark's claim.

In its brief, Kaiser does not even attempt to address Clark's argument that Kaiser has not met its burden to prove the elements of res judicata and, thereby, has tacitly admitted that the elements of res judicata are not met with respect to the unreasonable rate claim. (*See* Br. of Appellees at 37-38). The bankruptcy court's decision to disallow Clark's claim was based on the application of res judicata, giving preclusive effect to the FERC's decision in the Puget Sound proceeding. Accordingly, the bankruptcy court erred by disallowing Clark's unreasonable rate claim.

---

[4] In addition to showing that the bankruptcy court disallowed Clark's claims on the basis of res judicata, the transcript also shows that the bankruptcy court applied an incorrect test to make the determination before the Court. The bankruptcy court states that the test used to disallow Clark's claim is whether Clark is likely to have any reasonable success on the merits in raising the issue before FERC. (Docket No. 8444 7-8). The court erred by applying this improper test to disallow Clark's claims.

2.    *If the bankruptcy court denied the claim based on its alleged contingent nature, the bankruptcy court erred.*

Kaiser's assertion that the bankruptcy court disallowed Clark's unreasonable rate claim as contingent is incorrect and is not supported by the holding of the bankruptcy court. Kaiser selectively quotes the bankruptcy court from the hearing held on January 20, 2006 in support of its argument; however, the complete quotation offers no support for Kaiser's assertions. The bankruptcy court stated:

> With respect to the unreasonable rate issue that is on appeal, I think at this point in time that still means that Clark's claim is subject to disallowance. At best it is a contingent claim at this point. That is clearly disputed. If FERC sets aside that ruling, then I think at that point, Clark may have the right to come back in and reassert a claim based on whatever the FERC ends up deciding. But right now, **based on the FERC's decision**, I do not see that Clark has an allowable claim.

(Docket No. 8181 at 7 (emphasis added)). The excerpt cited by Kaiser, and the remainder of the transcript of the January 20, 2006 hearing as a whole, demonstrates without question that the bankruptcy court disallowed Clark's claim based on res judicata.

Even if the bankruptcy court had not erroneously held that res judicata bars Clark's claim (which it did), there is no basis for the bankruptcy court to disallow the unreasonable rate claim as "contingent." Although the Bankruptcy Code does not define "contingent" with respect to claims, the term is typically understood to mean a claim which becomes due only on the occurrence of a future event. *See Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 300 (2d Cir. 1997); *Avellino & Bienes v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.)*, 744 F.2d 332, 337 at n. 7 (3d Cir. 1984). There is nothing contingent about Clark's unreasonable rate claim. No future event need take place to bring the claim into existence. Clark's unreasonable rate claim is not contingent, it is merely disputed. There is no basis for disallowing the claim because it is disputed.

Although Kaiser claims that the bankruptcy court disallowed Clark's claim on "traditional principles of bankruptcy law applicable to the claims allowance and disallowance process," Kaiser does not identify these traditional principles or in any way refute Clark's arguments. In fact, the bankruptcy court's disallowance of Clark's claims is directly in conflict with traditional principles of bankruptcy law with respect to the allowance and/or disallowance of claims. Claimants are frequently allowed to litigate their claims for the purpose of fixing the liability of the estate. Where a claimant holds a disputed claim, the Bankruptcy Code provides that such claim shall be litigated. However, Clark has been prevented from litigating the unreasonable rate claim by the enforcement of the automatic stay by the bankruptcy court. In this instance, because the matters involved require material review and interpretation of the FPA, this Court should reverse the bankruptcy court's erroneous disallowance of Clark's claims and refer the matter to FERC for further proceedings.

## CONCLUSION

The last paragraph of Kaiser's argument, wherein Kaiser states that "the disallowance of the Unreasonable Rate Claim avoids bifurcated litigation on the two claims," reflects the true nature of Kaiser's arguments and the proceedings in the bankruptcy case thus far. Kaiser essentially argues that disallowance of Clark's claims is proper because it will allow the Debtor and the bankruptcy court to avoid having to litigate Clark's claims. This is simply not a legitimate reason to disallow Clark's claims. To disallow Clark's claims merely to avoid inconvenient litigation is inequitable, violates the spirit and purpose of the Bankruptcy Code, and, more importantly, amounts to a total violation of due process. As established by Clark, the bankruptcy court's disallowance of Clark's claims should be reversed and these matters referred to FERC for final determinations.

For the reasons set forth above, Clark respectfully requests that this Court reverse the bankruptcy court's March 7, 2006 Order. Clark further requests that this Court grant its motion to withdraw the reference, order Clark's claims to be presented to FERC and order the bankruptcy court to act in a manner consistent with the outcome of Clark's FERC proceedings. In the alternative, Clark requests that the Court reverse the bankruptcy court's order and remand the case to the bankruptcy court for further proceedings, or provide any other relief that the Court deems fit.

Respectfully submitted this 3rd day of October 2006.

DUANE MORRIS

Frederick B. Rosner, Esq.
(ID No. 3995)
1100 North Market Street, Ste. 1200
Wilmington, DE 19801-1246
Tel: (302) 657-4900
Fax: (302) 657-4901

and

BRACEWELL & GIULIANI LLP
William A. Wood, III, Esq.
(Texas Bar ID 21916050)
Warren W. Harris, Esq.
(Texas Bar ID 09108080)
Tracy C. Temple, Esq.
(Texas Bar ID 00793446)
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2781
Tel: (713) 223-2300
Fax: (713) 221-1212

and

George H. Williams, Jr., Esq.
2000 K Street, N.W., Suite 500
Washington, DC 20006
Phone: (202) 828-5800
Fax: (202) 223-1225

Counsel *to Public Utility District No. 1 of
Clark County d/b/a Clark Public Utilities*

# Unpublished Opinions

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2711101 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**C**
<u>Briefs and Other Related Documents</u>
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
In re ENRON CORP., et al., Debtors.
ENRON POWER MARKETING, INC., Plaintiff,
v.
CALIFORNIA POWER EXCHANGE CORP.,
Pacific Gas & Electric Co., and Southern California
Edison Co., Defendants.
No. 04 Civ. 8177(RCC).

Nov. 23, 2004.

OPINION & ORDER
<u>CASEY</u>, J.
*1 Defendants California Power Exchange Corp.
("CalPX"), Pacific Gas & Electric Co. ("PG & E"),
and Southern California Edison Co. ("SCE") move
for an order withdrawing the reference of the above-
captioned adversary proceeding, Adv. Pro. No. 04-
3091(AJG), to the United States Bankruptcy Court
for the Southern District of New York ("Bankruptcy
Court"), in accordance with <u>28 U.S.C. § 157(d)</u>.
Plaintiff and debtor Enron Power Marketing, Inc.
("Enron") opposes Defendants' motion. For the
following reasons, the motion to withdraw is
GRANTED.

I. BACKGROUND

Prior to seeking relief in the Bankruptcy Court in
2001,<u>FN1</u> Enron participated in wholesale power
markets operated in the State of California by CalPX,
a public utility regulated by the Federal Energy
Regulatory Commission ("FERC"). In accordance
with a tariff-and-rate schedule approved by the
FERC, Enron arranged for several banks to post
letters of credit in favor of CalPX. (*See* Defendants'
Mem. Supp. Motion to Withdraw, Oct. 1, 2004
("Mem. Supp ."), Ex. 1, CalPX FERC Electric
Service Tariff No. 2 ("CalPX Tariff"), June 7, 2000,
Schedule 2 § 2 (requiring market participants to
"post collateral for 100% of its requirements in
excess of the unsecured line of credit"); *id.* § 2.1
(allowing "collateral" to take the form of cash, surety
bonds, parent guarantees, or letters of credit).) In
January 2001 and November 2001, as the letters of
credit posted by Enron were about to expire, CalPX

drew down approximately $136 million on them.

> FN1. Enron petitioned for relief under
> chapter 11 of the Bankruptcy Code on
> December 2, 2001; the Enron bankruptcy
> proceedings are pending before the
> Honorable Arthur J. Gonzales.

On October 10, 2002, CalPX filed Proof of Claim
No. 9112 in Enron's bankruptcy case before Judge
Gonzales, asserting that the approximately $136
million in letter-of-credit proceeds, which CalPX is
currently holding in a segregated escrow account,
secure a $16,221.36 market-activity claim against
Enron as well as "other amounts to which CalPX is
entitled under applicable law and the [CalPX]
Tariff." The FERC has ordered that CalPX retain
collateral posted under the CalPX Tariff pending
completion of certain FERC proceedings. *See infra*
pp. 5-6.

On May 26, 2004, Enron filed an adversary
complaint and objection to the proof of claim in the
Bankruptcy Court, seeking turnover of the letter-of-
credit proceeds. (*See* Enron's Adversary Complaint
and Objection to CalPX's Proof of Claim, May 26,
2004 ("Complaint") at ¶ ¶ 1-3.) Specifically, Enron
seeks a judgment from the Bankruptcy Court
declaring that the approximately $136 million in
letter-of-credit proceeds are the property of the Enron
bankruptcy estate and that CalPX lacks a valid,
perfected security interest in the funds. (*Id.* at ¶ ¶ 1-
2, 11, 47.)

Two motions to dismiss and one motion for summary
judgment have been filed in the matter before Judge
Gonzales. On July 1, 2004, CalPX moved to dismiss
Enron's complaint in the underlying adversary
proceeding on the ground that the Bankruptcy Court
lacks subject matter jurisdiction-arguing that such
jurisdiction properly lies with the FERC, not the
federal courts, because Enron's claims turn on the
tariff-and-rate schedule, approved by the FERC
pursuant to the FERC's exclusive jurisdiction under
the Federal Power Act, <u>16 U.S.C. § 824</u> *et seq.* On
August 26, 2004, with Enron's consent, SCE and PG
& E were allowed to intervene as defendants. As
their responsive pleading, SCE and PG & E filed a
motion to dismiss on four grounds: that the
Bankruptcy Court lacks subject matter jurisdiction;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2711101 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

that Enron's claims are barred by res judicata; that Enron's complaint represents an improper collateral attack on the CalPX Tariff as interpreted by the FERC; and that the Bankruptcy Court should defer to the FERC under the doctrine of primary jurisdiction. On September 27, 2004, Enron filed a motion for partial summary judgment.

*2 On October 18, 2004, CalPX, PG & E, and SCE ("Defendants") filed' this Motion to Withdraw the Reference to the Bankruptcy Court in accordance with Federal Rule of Bankruptcy Procedure 5011, requesting that this Court grant either mandatory or discretionary withdrawal under 28 U.S.C. § 157(d). The Court heard oral argument on this motion on November 18, 2004.

## II. DISCUSSION

The Court has subject matter jurisdiction under 28 U.S.C. § § 1334 and 157(d). Under a standing order issued in July 1984 by then-Acting Chief Judge Ward pursuant to 28 U.S.C. § 157(c), Chapter 11 cases in the Southern District of New York are automatically referred to the Bankruptcy Court. See Enron Corp. v. Belo Co. (In re Enron Corp.), No. 04 Civ. 1861(MBM), 2004 WL 2480405, at *1 (S.D.N.Y. Nov. 4, 2004); Enron Power Marketing, Inc. v. Holcim, Inc (In re Enron Corp.), No. 04 Civ. 509(MBM), 2004 WL 2149124, at *2 (S.D.N.Y. Sept. 23, 2004); see also 28 U.S.C. § 157(a) (indicating that the Bankruptcy Court derives its authority from the reference of the district court). A party can move to withdraw the reference to the Bankruptcy Court under 28 U.S.C. § 157(d), which provides for both discretionary and mandatory withdrawal:

The district court *may* withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court *shall*, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added). Defendants move for both mandatory and permissive withdrawal of the reference of the adversary proceeding to the Bankruptcy Court.

The mandatory-withdrawal provision of 28 U.S.C. § 157(d) requires withdrawal of the reference to a

bankruptcy court for any proceeding "that would otherwise require a bankruptcy court judge to engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes." City of New York v. Exxon Corp., 932 F.2d 1020, 1026 (2d Cir.1991). "The purpose of § 157(d) is to assure that an Article III judge decides issues calling for more than routine application of [federal laws] outside the Bankruptcy Code." *Eastern Airlines, Inc. v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, No. 89 Civ. 8250(MBM), 1990 WL 5203, at *5 (S.D.N.Y. Jan. 24, 1990). Courts in this Circuit have construed § 157(d) narrowly to prevent litigants using it as an "escape hatch" out of bankruptcy court. In re Enron, 2004 WL 2149124, at *4. Mandatory withdrawal is appropriate, however, in "cases where substantial and material consideration of non-Bankruptcy Code federal [law] is necessary for the resolution of the proceeding." *Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir.1990) (internal quotation marks and citation omitted). To satisfy the substantial-consideration test, the issues of non-bankruptcy law raised by the proceeding need not be unsettled or involve matters of "first impression." McCrory Corp. v. 99¢ Only Stores (In re McCrory Corp.), 160 B.R. 502, 505 (S.D.N.Y.1993) (noting that what is at issue is "the *degree* to which the bankruptcy judge would have to consider the federal [non-bankruptcy] law" (emphasis added)). It is not clear that only a "simple application" of federal non-bankruptcy law is required of the Bankruptcy Court here. See Exxon, 932 F.2d at 1026.

*3 The CalPX Tariff under which the letters of credit were initially posted indicates that the collateral was meant to cover settlement of each market participant's outstanding liabilities in the CalPX-administered power markets. Id. § 2.2 (declaring that participants "shall maintain sufficient collateral to cover the estimated potential ... aggregate outstanding liabilities to and from [CalPX] between cash clearing cycles or during the true-up period in which the liabilities are incurred and when payment is billed and settled"); id. § 2.3 (declaring that participants' market activity would be reviewed daily and compared to posted collateral to ensure that each participant met the collateral requirement). Federal tariffs "have the force of [federal] law and are not simply contractual." AT & T v. City of New York, 83 F.3d 549, 552 (2d Cir.1996).

On July 30, 2002, the FERC interpreted Schedule 2, Section 2.2 of the CalPX Tariff in *Constellation*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2711101 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

*Power Source, Inc. v. Cal. Power Exch. Corp.*, 100 F.E.R.C. ¶ 61,124, 2002 WL 1764921, to deny a market participant's request that the FERC direct CalPX to release three letters of credit that had been provided as collateral under the CalPX Tariff, stating: [T]he disbursement of the collateral, or any disposition of jurisdictional property ... must be consistent with the CalPX tariff and, to the extent applicable, subject to review and approval by this Commission under Section 203 of the FPA.

*Id.* ¶ 48; *see also id.* ¶ 12, 27-28 (directing the order to all CalPX market participants on the ground that the "billed and settled" language in the CalPX Tariff required collateral to be retained pending the FERC's determination of outstanding liabilities arising from the California energy crisis).

The FERC has denied several requests from individual market participants to release CalPX collateral and funds on the ground that proper allocation cannot be made until the FERC resolves who owes what to whom in the wake of the California energy crisis. *See Pacific Gas & Electric Co. v. F.E.R.C.*, 373 F.3d 1315, 1317 (D.C.Cir.2004) (noting further that those denials by the FERC are currently on appeal to the D.C. Circuit); *see also Pacific Gas & Electric Co. v. Cal. Power Exch. Corp.*, 109 F.E.R.C. ¶ 61, 027, 2004 WL 2260894, ¶ 47 (Oct. 7, 2004) ("[T]he disbursement of funds should wait until a final computation of who owes what to whom ."); *Powerex Corp. v. Cal. Power Exch. Corp.*, 102 F.E.R.C. ¶ 61,328, 2003 WL 1605933, ¶ 38 (Mar. 27, 2003) (denying a market participant's request to direct CalPX to release a letter of credit posted as collateral under the CalPX Tariff). The FERC's interpretation of the tariff is that the CalPX collateral covers "outstanding liabilities" arising from CalPX market transactions, including as-yet-to-be-determined refunds:
Based on our review of CalPX's tariff, we find that the tariff language provides a basis for retaining the collateral, since outstanding liabilities have not been billed and settled, as required by the tariff. Under the provisions of CalPX's tariff, a market participant is required to post collateral as security for potential defaults arising from this participant's failure to pay its outstanding liabilities to CalPX. Outstanding obligations are not extinguished until they are billed and settled.... [T]he final billing and settlement has not yet taken place given the numerous ongoing contested proceedings regarding the transactions that occurred in the CalPX markets.... Only after its completion can the Commission begin to determine the liabilities of each supplier. Until those figures are

determined, the process of final billing and settling cannot start.

*4 *PG & E Trading-Power, LP v. Cal. Power Exch. Corp.*, 102 F.E.R.C. ¶ 61,091, 2003 WL 245787, ¶ 14 (Jan. 30, 2003). In requesting that the Bankruptcy Court order CalPX to turn over the letter-of-credit proceeds, Enron invites the Bankruptcy Court to interpret the CalPX Tariff contrary to repeated FERC orders that CalPX retain collateral until all outstanding obligations are billed and settled.

As a threshold issue, it must be determined who has jurisdiction over the collateral at issue. Such a determination requires an examination of the interrelation between the bankruptcy and federal energy regulatory laws and the spheres of authority that enforce those laws. Under the Federal Power Act, the FERC has the exclusive authority to pass upon the reasonableness of the structure, terms, and conditions pertaining to the sale and distribution of wholesale electric rates, *see* 16 U.S.C. § § 824, 824d and 824e, but Enron casts its requested relief in non-regulatory terms and asserts that the Bankruptcy Court is confronted with a simple bankruptcy case--nothing more than a contractual dispute between the parties raising security-interest issues--such that the Bankruptcy Court can make the determination of whether to turn over the proceeds "under the provisions of the Bankruptcy Code governing secured claims, applicable nonbankruptcy law, and the terms of [Enron's] contractual agreements with [CalPX]."

A federal district court in Texas recently granted a defendant's motion to withdraw the reference from bankruptcy court in a case with virtually identical facts. *See Mirant Americas Energy Marketing, LP v. Pacific Gas & Electric Co. (In re Mirant Corp.)*, No. 04-CV-557-A, slip op. at 2 (N.D.Tex. Oct. 22, 2004). In *Mirant*, a participant in the California energy markets that had deposited $333,905.34 as "collateral" under the CalPX Tariff filed a complaint against CalPX in its bankruptcy case, Adv. Proc. No. 04-4242 (Bankr.N.D.Tex.), seeking an order directing CalPX to turn the collateral over, despite FERC orders "that no distributions be made until [the FERC's] further order." *Id.* In withdrawing the reference, the district court concluded that "the bankruptcy court would necessarily have to consider the Federal Power Act in ruling on the adversary complaints" and that such consideration would be "more than *de minimis.*" *Id.* at 1-2.

The Bankruptcy Court cannot adjudicate this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2711101 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

objection and determine whether the letter-of-credit proceeds must be turned over to Enron's bankruptcy estate without substantial and material consideration of federal law beyond Title 11 to determine, at the outset, whether the funds at issue fall within the FERC's exclusive jurisdiction or whether this is a garden-variety bankruptcy case. Accordingly, Defendants' motion to withdraw the reference is granted on mandatory-withdrawal grounds so that this Court may resolve the threshold jurisdictional issues in accordance with applicable non-bankruptcy federal law. The Court need not address the parties' permissive-withdrawal arguments in light of its decision.

## III. CONCLUSION

**\*5** For the aforementioned reasons, Defendants' Motion to Withdraw the Reference of this adversary proceeding to the Bankruptcy Court is GRANTED.

S.D.N.Y.,2004.
In re Enron Corp.
Not Reported in F.Supp.2d, 2004 WL 2711101 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:04cv08177 (Docket) (Oct. 18, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 1185804 (S.D.N.Y.), 54 Collier Bankr.Cas.2d 367
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Briefs and Other Related Documents

United States District Court,S.D. New York.
In re: ENRON CORP., et al., Debtors,
THE STATE of California, The California
Department of Water Resources, Pacific Gas &
Electric Company, Southern California Edison
Company Plaintiffs,
v.
ENRON CORP., et al., Defendants.
**No. 05 Civ. 4079(GBD).**

May 18, 2005.

*MEMORANDUM DECISION & ORDER*
DANIELS, J.
*1 Prior to their bankruptcy filing, Enron affiliates
participated in wholesale power markets operated by
the California Power Exchange Corporation ("Cal
PX") and the California Independent System
Operator Corporation ("Cal ISO"). Pursuant to the
Federal Power Act ("FPA"), 16 U.S.C. § 824 *et seq,*
these markets were governed by tariffs and rate
schedules approved by the Federal Energy
Regulatory Commission ("FERC"). Plaintiffs filed
separate proofs of claim for amounts they contend
that Debtors, Enron and its affiliates ("Defendants"),
owe. The Debtors have filed objections to all proofs
of claim on various grounds. The claims fall into the
following categories: (1) claims for refunds and
amounts based upon violations of the FPA that are
under consideration by FERC (the "FERC Claims");
(2) claims for violation of various state and federal
laws premised on Defendants' alleged gaming and
manipulation of the electric, power and natural gas
markets (the "Market Manipulation Claims"); and (3)
claims based on pre-petition meter data errors (the
"Meter Data Claims").

Various hearings on the Debtors' objections to the
proofs of claim filed by the Plaintiffs are scheduled
before the United States Bankruptcy Court for the
Southern District of New York, Arthur J. Gonzalez,
J., (the "Bankruptcy Court"). Plaintiffs now move for
both a mandatory and permissive Order to withdraw
the reference to the Bankruptcy Court of all the
proofs of claim pursuant to 28 U.S.C. § 157(d).
Defendants oppose the motion. For the following
reasons, the motion to withdraw the reference is

DENIED.[FN1]

> FN1. Therefore, Plaintiffs Motion to Stay
> Claims Objections Pending A Decision To
> Withdraw The Reference is denied as moot.

Plaintiffs contend that withdrawal of the reference is
mandatory because resolution of the Debtors
objections to the proofs of claim will require the
Bankruptcy Court to apply and consider "significant
interpretation" of federal laws other than the
Bankruptcy Code. Section 157(d), which establishes
the standard for mandatory withdrawal, provides that
the "district court shall, on timely motion of a party,
... withdraw a proceeding if the court determines that
resolution of the proceeding requires consideration of
both title 11 and other laws of the United States
regulating organizations or activities affecting
interstate commerce." This provision is narrowly
construed "to prevent litigants [from] using it as an
'escape hatch' out of bankruptcy court." *Enron
Power Mktg., Inc. v. California Power Exch. Corp. et
al. (In re Enron Corp .)* ("EPMI" ), No. 04Civ8177,
2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004);
*Enron Power Mktg., Inc. v. Holcim, Inc.(In re Enron
Corp.),* No. 04Civ509, 2004 WL 2149124, at *5
(S.D.N.Y. Sept. 23, 2004). Further, section 157(d)'s
application is only appropriate in instances where
"substantial and material consideration of non-
Bankruptcy Code federal [law] is necessary for the
resolution of the proceeding." *Shugrue v. Air Line
Pilots Ass'n Int'l (In re Ionosphere Clubs. Inc.),* 922
F.2d 984, 995 (2d Cir.1990) (citations omitted); *City
of New York v. Exxon Corp.,* 932 F.2d 1020, 1026 (2d
Cir.1991) (mandatory withdrawal is appropriate if it
"would otherwise require a bankruptcy court judge to
engage in significant interpretation, as opposed to
simple application, of federal laws apart from the
bankruptcy statutes"); *Enron Power Mktg., Inc. v.
City of Santa Clara (In re Enron Power Mktg., Inc).*
No.01 Civ7964, 2003 WL 68036. at *4 (S.D.N.Y.
Jan. 8. 2003) (instances where courts have found
substantial and material interpretations of federal
laws include "(1) issues of first impression; (2)
analyses of tariffs requiring something other than a
rote application of existing precedent; and (3) the
decision as to whether resort to administrative
remedies is a prerequisite to commencing an action in
court").

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 1185804 (S.D.N.Y.), 54 Collier Bankr.Cas.2d 367
(Cite as: Not Reported in F.Supp.2d)

\*2 Plaintiffs specifically argue that withdrawal of the reference of the proofs of claim is mandated because the Debtors' privity objections would require substantial interpretation of FERC-approved Cal ISO and Cal PX tariffs. They further argue that the Debtors' objections premised on federal preemption and the File Rate Doctrine will require substantial interpretation of the pertinent tariffs. They also contend that the legal applicability of the Filed Rate Doctrine is disputed and unsettled. However, this Court does not find that the resolution of the proofs of claim dispute require substantial and material interpretation of federal non-bankruptcy law mandating withdrawal of the reference.

First, Plaintiffs reliance on *EPMI* is misplaced. In *EPMI*, the court granted the motion for mandatory withdrawal of the reference because the threshold determination of whether FERC or the bankruptcy court had jurisdiction over the collateral issue required substantial and material interpretation of non-bankruptcy federal law. *See Enron Power Mktg., Inc. v. California Power Exch. Corp. et al. (In re Enron Corp.) ("EPMI" )*, No. 04Civ8177, 2004 WL 2711101, at \*4 (S.D.N.Y. Nov. 23, 2004). Similarly, Plaintiffs also rely on *Mirant Ams. Energy Mktg., LP v. Pacific Gas & Elec. Co.*, No. 04CV557A, slip op. (N.D.Tex. Oct. 22, 2004). There, the district court found that "the bankruptcy court would necessarily have to consider the [FPA] in ruling on the adversary complaints". *Id.* at 2. Such a consideration would be "more than *de minimis." Id.*

In the instant matter, the Debtors' objections to the proofs of claim do not lead to any jurisdictional conflict requiring substantial and material interpretation of non-Bankruptcy federal law. Plaintiffs have not articulated what is *substantial and material* with regard to the Bankruptcy Court's consideration of the parties Market Manipulation Claims. Furthermore, Plaintiffs acknowledge that FERC has already issued a number of decisions interpreting the tariffs at issue. Plaintiffs bare contention that these FERC decisions are conflicting does not persuade this Court that substantial and material interpretations of federal law is implicated if the Bankruptcy Court adjudicates the Debtors privity objection to the FERC Claims and Meter Data Claims. Equally unavailing is the argument that the Bankruptcy Court would have to review and interpret the FPA and the Natural Gas Act to resolve the preemption issues raised by the Debtors' objections. Mandatory withdrawal is not available merely because during a bankruptcy proceeding, non-Bankruptcy Code federal statutes or laws will be

considered. *Shugrue v. Air Line Pilots Ass'n Int'l (In re Ionosphere Clubs. Inc.)*, 922 F.2d 984, 995 (2d Cir.1990) (citations omitted). While it is not necessary that the federal law or statute implicated involve unsettled law or issues of first impression, what is relevant is "the *degree* to which the bankruptcy judge would have to consider [the] federal [non-bankruptcy] law[s]", not just their application. *McCrory Corp. v 99¢ Only Stores (In re McCrory Corp.)*, 160 B.R. 502, 505 (S.D.N.Y.1993) (emphasis added). For these reasons, the Court finds that mandatory withdrawal is not warranted here.

\*3 Plaintiffs also argue that discretionary withdrawal is warranted in this case because significant "non-core" matters are involved. This Court "may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on a timely motion of any party, for cause shown." 28 U.S.C. § 157(d). Whether a claim is core or non-core is one of the factors a district court should consider in determining whether withdrawal "for cause" exists under section 157(d). *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion)*, 4 F.3d 1095, 1101 (2d Cir.1993); *see also Enron Power Mktg., Inc. v. City of Santa Clara (In re Enron Power Mktg.)*, No.01Civ7964, 2003 WL 68036, at \*6 (S.D.N.Y. Jan. 8. 2003). However, a motion to withdraw the reference on core/non-core grounds is a determination to be made by the Bankruptcy Court. 28 U.S.C. § 157(b)(3) ("[T]he bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection ..."). In the instant case, the Bankruptcy Court has not made any determination that the Debtors' claims objections are core or non-core. Therefore, this Court defers to the Bankruptcy Court in determining the core/non-core status issues in this case. *See Enron Power Mktg., Inc. v. Holcim, Inc. (In re Enron Corp.)*, No. 04Civ509, 2004 WL 2149124, at \*3 (S.D.N.Y. Sept. 23, 2004) (declining to preempt the core/non-core determination by the bankruptcy court).

Moreover, the Second Circuit has held that once a core/non-core determination has been made, the district court "should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." *In re Orion*. 4 F .3d at 1101; *see also South Street Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755, 762 (2d Cir1996) (listing same). Even if the Bankruptcy Court were to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 3
Not Reported in F.Supp.2d, 2005 WL 1185804 (S.D.N.Y.), 54 Collier Bankr.Cas.2d 367
(Cite as: Not Reported in F.Supp.2d)

determine that the instant matters are non-core, judicial efficiency as well as the uniform administration of the bankruptcy court proceedings weigh in favor of not withdrawing the reference. The Bankruptcy Court has presided over the Enron bankruptcy cases for over three years. The Bankruptcy Court is more thoroughly familiar with the Debtors claims and issues in the instant matter and all of the other Enron-related cases. Thus, the Bankruptcy Court is in a better position to adjudicate them all.[FN2]

> FN2. In the Enron-related cases, other than *Enron Power Mktg., Inc. v. California Power Exch. Corp. et al. (In re Enron Corp.)* ("*EPMI*"), No. 04Civ8177, 2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004) cited by Plaintiff, no court in this district has granted a motion to withdraw the reference, whether discretionary or mandatory. *See Enron Wind Energy Sys., LLC v. Marathon Elec. Mfg. Corp. (In re Enron Corp.),* No. 04 Civ. 7950, *slip op.* (S.D.N.Y. Feb. 14, 2005) (discretionary); *Amerada Hess Corp. v. Enron Corp. (In re Enron Corp.),* No. 03 Civ 5288, *slip op.* at 6 (S.D.N.Y. Sept. 24, 2004) (discretionary); *Enron Power Mktg., Inc. v. Holcim, Inc. (In re Enron Corp.),* No. 04 Civ. 509, *slip op.* (S.D.N.Y. Sept. 22, 2004) (discretionary); *Enron Corp. v. Belo Co. (In re Enron Corp.),* No. 04 Civ. 1861, *slip op.* (S.D.N.Y. Sept. 22, 2004) (discretionary); *Enron N. Am. Corp. v. Media Gen., Inc. (In re Enron Corp.).* No. 04 Civ 2527, 2004 WL 1197243 (S.D.N.Y. May 28, 2004) (mandatory and discretionary); *Enron Power Mktg., Inc. v. Luzenac Am., Inc. (In re Enron Corp),* No. 03 Civ. 1524, *slip op.* (S.D.N.Y. Mar. 25, 2004) (discretionary); *Enron N. Am. Corp. v. Random House, Inc. (In re Enron Corp.),* No. 03 Civ. 9312, *slip op.* (S.D.N.Y. Jan. 28, 2004) (discretionary); *United Illuminating Co. v. Enron Power Mktg., Inc. (In re Enron Corp.),* No. 03 Civ5078, 2003 WL 22171695 (S.D.N.Y. Sept. 22, 2003) (discretionary); *Am. Coal Co. v. Enron N. Am. Corp.,* No. 03 Civ. 1727, *oral decision* (S.D.N.Y. June 25, 2003) (mandatory and discretionary); *Nevada Power co. v. Enron Power Mktg., Inc.,* No. 02 Civ.7891, *oral decision* (S.D.N.Y. Jan 23-24, 2003) (mandatory and discretionary); *Enron Power Mktg., Inc. v. City of Santa Clara (In re*

*Enron Power Mktg., Inc.),* No. 01 Civ. 7964, 2003 WL 68036 (S.D.N.Y. Jan. 8, 2003) (mandatory and discretionary). In two instances, motions to withdraw the reference were removed by the court from its docket or calendar at the request of the plaintiffs. *See Tribune Co. v. Enron N. Am. Corp.,* 03 Civ. 0053 (S.D.N.Y .); *Enron N. Am. Corp. v. Knight-Ridder, Inc.,* No. 02 Civ. 9502 (S.D.N.Y.) (Daniels, J.).

The motion for an Order withdrawing the reference is DENIED.
SO ORDERED.

S.D.N.Y.,2005.
In re Enron Corp.
Not Reported in F.Supp.2d, 2005 WL 1185804 (S.D.N.Y.), 54 Collier Bankr.Cas.2d 367

Briefs and Other Related Documents (Back to top)

• 1:05CV04079 (Docket) (Apr. 22, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 351605 (E.D.Pa.), 1998-1 Trade Cases P 72,204
(Cite as: Not Reported in F.Supp.)

H
Briefs and Other Related Documents

United States District Court, E.D. Pennsylvania.
PROTOCOMM CORP., Plaintiff,
v.
NOVELL, INC. and NOVELL MULTIMEDIA,
INC., Defendants.
No. CIV.A. 94-7774.

June 30, 1998.

*MEMORANDUM*

REED
**\*1** In an Order dated December 9, 1994, this Court denied in part the motion of plaintiff ProtoComm Corp. ("ProtoComm") for leave to file an amended complaint in the precursor to this case, *ProtoComm Corp. v. Novell Multimedia, Inc.,* No. 93-0518 ("*ProtoComm I* "). The Court reasoned that allowing ProtoComm to fully amend its complaint would have resulted at that "advanced stage of the proceedings" in "further delay of this action" that "would be unfair to [Novell Multimedia, Inc.] and this Court." (Document No. 101 at 3). Made without the benefit of hindsight the Court enjoys today, the decision to deny leave to amend has failed to facilitate a more expeditious resolution of the dispute between these parties or to conserve the resources of this Court. For within months of the Order denying in part its motion to amend its complaint in *ProtoComm I*, ProtoComm filed this separate lawsuit against Novell Multimedia, Inc. (formally known and hereinafter referred to as "Fluent" and Novell, Inc, ("Novell"), and alleged the same claims against Novell and Fluent which ProtoComm unsuccessfully sought to add to its original suit.

Before the Court are the motions of defendants Novell and Fluent for summary judgment (Document Nos. 22 and 24 respectively). Because this Court finds that the claims of ProtoComm against Fluent and Novell here are essentially similar to the claims made in *ProtoComm I* and that ProtoComm attempted to add these same claims to its complaint in *ProtoComm I,* I conclude that the claims are barred by claim preclusion. Accordingly, the motions will be granted.

I. BACKGROUND HISTORY

The voluminous facts of this case have been detailed in Memoranda of this Court dated December 27, 1994 (Document No. 103), January 4, 1995 (Document No. 106), February 26, 1997 (Document No. 312) in *ProtoComm I* and will not be repeated here in full. The brief summary of facts which follows is gleaned from these Memoranda and the parties' submissions to the Court in relation to the pending motions for summary judgment.

On April 28, 1992, ProtoComm and Fluent signed a Cross Licensing Agreement and Memorandum of Understanding ("the Agreement") which memorialized an arrangement to cooperate and not to compete with each other in the development and sale of a multimedia computer software product which would allow networked computers to show full-motion digital video playback. ProtoComm and Fluent agreed to work together to combine the function of "video streaming," which was developed by ProtoComm, with the function of "scaling," which was developed by Fluent, in order to develop a joint product. Video streaming allows a stream of video data to flow directly from the server's hard drive to the client's workstation. Scaling maintains the synchronization of the audio and video data which reaches network workstations by "throwing away" information being delivered by full motion video by reducing the delivery from thirty frames per second to twenty or ten frames per second. The Agreement provided that the parties would not use each others' proprietary information except for in development of a joint product and that neither party could produce any product that would compete with the core technology the other was contributing to the joint effort.

**\*2** ProtoComm filed suit against Fluent on January 29, 1993, and ultimately alleged claims for breach of contract, fraud, specific performance and injunctive relief, misuse of confidential information, unjust enrichment, restitution, violation of the Lanham Act, and punitive damages.[FN1] This lawsuit was *ProtoComm I* (Civil Action No. 93-0518). ProtoComm claimed therein that with the inducement and assistance of Novell, Fluent shared with Novell information about video streaming that it gained from ProtoComm through the Agreement in order to produce two joint products with Novell, in violation

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 351605 (E.D.Pa.), 1998-1 Trade Cases P 72,204
(Cite as: Not Reported in F.Supp.)

of the Agreement with ProtoComm. Novell develops, manufactures, and markets computer software, including computer operating systems software for local area networks. In July of 1993, Novell acquired the Fluent company for approximately $21.5 million and Fluent (eventually by name change, Novell Multimedia, Inc.) became a wholly-owned subsidiary of Novell.

> FN1. The original complaint (Document No. 1) contained claims for specific performance and injunctive relief (Count I), for additional injunctive relief (Count II), for money damages (Count III), and misuse of confidential information (Count IV). On December 9, 1994, this Court granted in part ProtoComm's motion for leave to amend the complaint and allowed ProtoComm to add claims for fraud, unjust enrichment, restitution, and a claim under the Lanham Act. ProtoComm filed an amended complaint on December 28, 1994 (Document No. 104) and a second amended complaint on January 12, 1995 (Document No. 109). Pursuant to Local Rule of Civil Procedure 16.1(d), this Court adopted the Second Proposed Joint Pretrial Order (Document No. 161) and the Joint Legal Issues Supplement (Document No. 177) (hereinafter "superseding pleadings") of the parties on June 26, 1996, which superseded all pleadings. The superseding pleadings defined the claims for trial as breach of contract, fraud, specific performance and injunctive relief, misuse of confidential information, unjust enrichment, restitution, violation of the Lanham Act, and punitive damages.

On December 20, 1993, ProtoComm filed a motion for leave to amend the complaint in *ProtoComm I.* ProtoComm sought to add Novell as a defendant and to allege various new claims against Novell and Fluent. In an Order dated December 9, 1994, this Court denied the motion in part and granted it in part. This Court denied ProtoComm's request to add Novell as a defendant and to add antitrust claims against Fluent and Novell because the request was untimely and because the claims that ProtoComm wanted to add would "create an entirely different case requiring considerable factual and legal investigation concerning wholly new theories of law and concepts of recovery" (Document No. 101 at 1).

The disposition of ProtoComm's claims in *ProtoComm I* at trial was as follows: ProtoComm withdrew its claims for specific performance and injunctive relief, misuse of confidential information, unjust enrichment, and restitution; the Court denied ProtoComm's claims under the Lanham Act and for punitive damages as a matter of law upon a motion by Fluent under Federal Rule of Civil Procedure 50; the claims of fraud and breach of contract went to the jury. In July of 1996, *ProtoComm I* went to trial and a jury returned a verdict of $12.5 million in favor of ProtoComm on its breach of contract claim and found against ProtoComm on its fraud claim. The judgment entered on this verdict was affirmed by the Court of Appeals for the Third Circuit on October 29, 1997. *See ProtoComm Corp. v. Novell Multimedia, Inc.,* No. 97-1192, slip op. at 1 (3d Cir. October 29, 1997).

Shortly after the partial denial of its motion for leave to amend in *ProtoComm I,* ProtoComm filed this lawsuit against Fluent and Novell ("*ProtoComm II*"). The complaint alleges essentially the same claims that ProtoComm sought to add in its proposed amended complaint. The complaint includes claims against Fluent and Novell under sections 1 and 2 of the Sherman Act and section 7 of the Clayton Act, and claims against Novell for fraud, intentional interference with an existing contract, specific performance and injunctive relief, breach of contract, misuse of confidential information, unjust enrichment, restitution, and violation of the Lanham Act. ProtoComm subsequently withdrew its claims against Novell for specific performance and injunctive relief, breach of contract, misuse of confidential information, and the Lanham Act violation. Novell and Fluent filed motions for summary judgment in October of 1997 arguing that the claims asserted in *ProtoComm II* are barred by claim preclusion (or res judicata), or by issue preclusion (or collateral estoppel),[FN2] and alternatively that they are entitled to judgment as a matter of law on the merits of ProtoComm's claims.

> FN2. After Novell and Fluent filed these motions for summary judgment, the parties entered into a stipulation which explicitly deemed moot that part of Novell's motion based on issue preclusion. (Document No. 28).

## II. STANDARD FOR SUMMARY JUDGMENT

*3 Rule 56(c) of the Federal Rules of Civil Procedure provides that "if the pleadings, depositions, answers

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 351605 (E.D.Pa.), 1998-1 Trade Cases P 72,204
(Cite as: Not Reported in F.Supp.)

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" then a motion for summary judgment may be granted. The moving party has the initial burden of illustrating for the court the absence of a genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).*

### III. DISCUSSION

### A. Claim Preclusion

*1. The Arguments of the Parties*

The first basis for summary judgment that Novell and Fluent present is the affirmative defense of claim preclusion. Novell argues that the claims that ProtoComm asserts in this case are barred by claim preclusion because (1) the Order of this Court dated February 25, 1997 denying Fluent's post-trial motions in *ProtoComm I* constitutes a final order, (2) Novell and Fluent are in privity for res judicata purposes, and (3) all of the claims asserted by ProtoComm in this case arise out of the same transactions that were litigated in *ProtoComm I.*[FN3]

> FN3. Fluent makes similar claim preclusion arguments in support of its motion for summary judgment and generally adopts the arguments of Novell, with the exception that Fluent does not make a privity argument because ProtoComm was a party to the first action, and thus, does not need to establish privity.

First, Novell argues that a final order exists not only as to the claims decided on the merits in *ProtoComm I,* including the claims for breach of contract, fraud, punitive damages, and the claim under the Lanham Act, but also to those voluntarily withdrawn by ProtoComm, including the claims for specific performance and injunctive relief, misuse of confidential information, unjust enrichment and restitution because ProtoComm withdrew the claims unilaterally without stipulation or by order of the Court, and thus, the claims are dismissed with

prejudice under Federal Rule of Civil Procedure 41(a). Second, Novell argues that privity exists because at the time of the trial Novell owned Fluent as a wholly owned subsidiary, and Novell assisted in the defense of Fluent in *ProtoComm I.* Third, Novell argues that the events forming the factual predicate of this case are identical to those in *ProtoComm I.* In addition, Novell argues that claim preclusion applies to the claims excluded from *ProtoComm I* by the denial of the motion to amend the complaint.

ProtoComm counters the defendants' position with three arguments: (1) the issues raised in *ProtoComm II* are not identical to the issues raised in *ProtoComm I* and Novell was not named as a defendant, (2) there has been no final judgment on the issues presented in *ProtoComm II* and (3) while ProtoComm attempted to raise similar claims in *ProtoComm I,* Fluent and Novell wrongfully prevented ProtoComm from doing so.

**\*4 *2. Legal Analysis***

First, I take the task of clarifying some vocabulary: for the purposes of this Memorandum and in line with the modern trend, I will refer to the effect of a judgment in an earlier proceeding in precluding litigation of the *same cause of action* as "claim preclusion" and to the effect of a judgment in an earlier proceeding in precluding the relitigation of *issues* that have been actually litigated and decided as "issue preclusion." *See United States v. Athlone Industries, Inc., 746 F.2d 977, 983 n. 4 (3d Cir.1984).*[FN4]

> FN4. Much confusion surrounds the definition and nomenclature of these two distinct concepts. For example, Wright and Miller and occasionally the Court of Appeals for the Third Circuit refer to both concepts generally as res judicata. *See Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 961 n. 1 (3d Cir.1991); 18 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 4402 (1981).* Novell and other courts and commentators, including occasionally the Court of Appeals for the Third Circuit, equate claim preclusion to res judicata and issue preclusion to collateral estoppel. *See Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra, 983 F.2d 495, 504-505 (3d Cir.1992).*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 351605 (E.D.Pa.), 1998-1 Trade Cases P 72,204
(Cite as: Not Reported in F.Supp.)

It is well established that claim preclusion bars the assertion of a claim in a subsequent suit that was or could have been asserted in an earlier suit if there is "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities, and (3) a subsequent suit based on the same cause of action." *See Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra,* 983 F.2d 495, 504 (3d Cir.1992). The doctrine of claim preclusion bars not only claims actually litigated but also claims that could have been brought in the prior action. *Id.* ("Claim preclusion, formerly referred to as res judicata, gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding.")[FN5]

> FN5. ProtoComm maintains that for "res judicata" to apply, the issue sought to be precluded must be the same issue as that involved in the prior action, the issue must have been actually litigated, and the issue must have been determined by a final judgment, citing *Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co.,* 63 F.3d 1227, 1231-32 (3d Cir.1995). This test from *Burlington,* however, is not apposite because it pertains to issue preclusion, or collateral estoppel, not claim preclusion.

*a. Existence of a Final Judgment*

I agree with the defendants that there has been a final judgment on the merits in *ProtoComm I* sufficient for claim preclusion purposes, in that this Court found against ProtoComm as a matter of law on its claims under the Lanham Act and for punitive damages, the jury returned a verdict on ProtoComm's claims for breach of contract and fraud against Fluent, this Court entered judgment on the verdict and denied post-trial motions, and the verdict was affirmed on appeal. As these adjudications are sufficient to constitute a final judgment in *ProtoComm I* for the purposes applying the doctrine of claim preclusion to *ProtoComm II,* this Court need not and will not reach the question presented by Novell of whether ProtoComm's withdrawal of some of its claims constitutes a dismissal with prejudice and thus a final judgment.

*b. Presence of the Same Parties or Privity between the Parties*

In *Gambocz v. Yelencsics,* the Court of Appeals for the Third Circuit noted that "res judicata may be invoked against a plaintiff who has previously asserted essentially the same claim against different defendants where there is a close or significant relationship between successive defendants." *Gambocz v. Yelencsics,* 468 F.2d 837, 841 (3d Cir.1972). Indeed, "a lesser degree of privity is required for a new defendant to benefit from claim preclusion than for a plaintiff to bind a new defendant in a later action." *Lubrizol,* 929 F.2d at 966 (citing *Bruszewski v. United States,* 181 F.2d 419 (3d Cir.), *cert. denied,* 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950)).

*5 The requirement of the presence of the same parties or privity between the parties is obviously satisfied as to Fluent as it was the named defendant in *ProtoComm I.* I conclude that Novell is in privity with Fluent for claim preclusion purposes for two reasons. First, Novell acquired Fluent as a wholly owned subsidiary in July of 1993. *See Centra,* 983 F.2d 495, 504 (3d Cir.1992) (noting that defendant which acquired corporation which was defendant in prior action was in privity with prior defendant); *see also Lubrizol,* 929 F.2d at 966 (holding that defendant which was not a party to initial action was in privity to original defendant because the defendant was a wholly owned affiliate of original defendant, was a defendant in a similar case, and was a signatory to a settlement agreement between the parties); *In re Tetronics Services, Inc.,* 762 F.2d 185, 187-88 (2d Cir.1985) (holding that a wholly owned subsidiary of defendant in previous suit may benefit from claim preclusion); *G & T Terminal Packaging Co. v. Consolidated Rail Corporation,* 719 F.Supp. 153, 159 (S.D.N.Y.1989) (holding that subsidiaries are in privity with their principal for res judicata purposes when they sufficiently represent the principal's interests). Novell's participation in the defense of *ProtoComm I* demonstrates as well a close and significant relationship sufficient to establish privity between Fluent and Novell for claim preclusion purposes. ProtoComm admits that "Novell was plainly running the defense in ProtoComm I" by December of 1993. (Pl.'s Mem. at 25). *See Tetronics,* 762 F.2d at 191 (holding that plaintiff was in privity with corporation for claim preclusion purposes due to his continuous and active "non-party" participation in prior litigation by corporation).

*c. Claims Arising from the Same Cause of Action*

Like the term "privity," the term "cause of action" has a broad definition in the context of claim

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 351605 (E.D.Pa.), 1998-1 Trade Cases P 72,204
(Cite as: Not Reported in F.Supp.)

preclusion. The Court of Appeals for the Third Circuit has noted that in the claim preclusion context "the term 'cause of action' cannot be precisely defined, nor can a simple test be cited for use in determining what constitutes a cause of action for res judicata purposes." *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 983 (3d Cir.1984). In determining what constitutes a cause of action, a court should consider the "essential similarity of the underlying events giving rise to the various legal claims." *Davis v. United States Steel Supply*, 688 F.2d 166, 171 (3d Cir.1982) (en banc), *cert. denied*, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983). This includes an inquiry into the similarity of the acts complained of, the similarity of the material facts alleged, and the similarity of the witnesses and documentation needed to prove the allegations. *Lubrizol*, 929 F.2d at 963 (citing *Athlone*, 746 F.2d at 984). These factors are consistent with the present trend in the law of claim preclusion toward " 'requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence.' " *Athlone*, 746 F.2d at 984 (quoting 1B J. Moore & J. Wicer, Moore's Federal Practice ¶ 0.410[1] at 359 (2d ed. 1983)). Thus, claims in a second suit brought under legal theories that differ from those presented in an earlier lawsuit or that request different relief do not necessarily obviate the preclusive effects of claim preclusion if all of the theories comprise the same cause of action. *See Athlone*, 746 F.2d at 984.

*6 Determining whether the claims asserted in *ProtoComm II* are part of the same cause of action presented in *ProtoComm I* is a formidable task, given the lack of a simple definition or a clear test, and the number and complexity of the allegations made in both suits. I must determine if the claims alleged in *ProtoComm II* arise from the same transactions forming the basis of *ProtoComm I* and as such, could have been timely alleged by ProtoComm in *ProtoComm I*.

Consistent with the guidelines set forth in *Athlone* and *Lubrizol*, the first step is an inquiry into the similarity of the acts complained of. Overall, the wrongful acts complained of by ProtoComm in both *ProtoComm I* and *ProtoComm II* may be boiled down to this: As part of their scheme to drive ProtoComm out of the video software market, Fluent and Novell worked together to develop software which used confidential proprietary information about video streaming technology which Fluent illegally gained from ProtoComm in violation of the Agreement between ProtoComm and Fluent and

which Novell gained by deceiving ProtoComm. Once Fluent and Novell developed a successful video software product by using technology from ProtoComm, Novell purchased Fluent and discouraged venture capitalists from investing in ProtoComm in order to secure its dominance in the video software market.

The second step is an inquiry into the similarity of the facts *actually* alleged. This Court has undertaken the task of carefully comparing the similarity of the facts alleged in the pleadings of *ProtoComm I* [FN6] and *ProtoComm II* and concludes that the allegations are essentially similar. Even though ProtoComm alleged some facts in *ProtoComm II* that it did not plead in *ProtoComm I*, this does not conclusively establish that the two lawsuits represent separate causes of action because ProtoComm should have alleged all facts forming the underlying transactions and all claims arising from those transactions in *ProtoComm I*.[FN7] As to the specific claims made against Novell and Fluent in *ProtoComm II*, I will summarize the allegations pertaining to each claim individually.

> FN6. For purposes of this comparison, this Court considered all stages of the pleading in *ProtoComm I*, including the allegations of the complaint, amended complaint, second amended complaint, and the superseding pleadings.

> FN7. ProtoComm's argument that it would have pleaded all of these facts if the Court would have allowed it to fully amend its complaint in *ProtoComm I* will be addressed in section B of this Memorandum.

First, ProtoComm makes antitrust claims against Fluent and Novell for violations of Section 1 (Count I) and Section 2 (Count III) of the Sherman Act and against Novell for violation of Section 2 of the Sherman Act (Count II). In Count I, ProtoComm alleges that the actions of Novell and Fluent constitute a combination or conspiracy to restrain trade in the network operating systems ("NOS") and network video software markets, a vertical market division, and a joint venture to restrain trade. In Count II, ProtoComm alleges that the actions of Novell constitute a monopolization or attempted monopolization of the NOS and video server software markets. In Count III, ProtoComm alleges that the actions of Novell and Fluent constitute a conspiracy or combination to monopolize the NOS and video server software markets.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 6
Not Reported in F.Supp., 1998 WL 351605 (E.D.Pa.), 1998-1 Trade Cases P 72,204
(Cite as: Not Reported in F.Supp.)

*7 In referring to the "actions" of Novell and Fluent, ProtoComm refers to the factual allegations it made in the complaint. I conclude that those factual allegations are essentially similar to and substantively the same as the allegations made in the amended complaint and superseding pleadings in *ProtoComm I;* ProtoComm included some generic allegations related to monopoly, market control, and antitrust violations against Novell and Fluent in *ProtoComm I.* (Second Amended Complaint ¶ 50; Amended Complaint ¶ ¶ 78, 79, 82). The only difference is that in Counts I, II, and III of the complaint in *ProtoComm II,* ProtoComm attacks those same actions under a different, more focused legal theory: that those actions are violations of specific antitrust laws. Attaching another legal theory onto the same factual predicate is not enough to escape the barring effect of claim preclusion.

In Count IV of *ProtoComm II,* ProtoComm makes a claim against Novell and Fluent for violation of Section 7 of the Clayton Act. ProtoComm alleges that by acquiring Fluent, Novell acquired its patents and copyrights which will substantially lessen competition because the remaining video server companies will feel pressure to withdraw from the market, as ProtoComm did, and will tend to create a monopoly in violation of Section 7 of the Clayton Act. The fact that Novell acquired Fluent was included in the pleadings in *ProtoComm I.* (Second Amended Complaint ¶ ¶ 51, 93; Amended Complaint ¶ 80).

ProtoComm makes a claim for fraud against Novell in *ProtoComm II* (Count V). ProtoComm made similar claims against Fluent in *ProtoComm I;* ProtoComm alleged that Fluent never intended to perform the Agreement and that Fluent worked with Novell to gain competitive advantage over ProtoComm. (Joint Legal Issues Supplement at 2). In *ProtoComm II,* ProtoComm alleges that Novell obtained proprietary information from ProtoComm by misrepresenting to ProtoComm that it was interested in investing in ProtoComm and then used this information with Fluent to gain competitive advantage over ProtoComm. (Complaint ¶ ¶ 123-26). ProtoComm made essentially this same assertion about Novell in the amended complaint and superseding pleadings in *ProtoComm I.* (Amended Complaint ¶ ¶ 20, 48; Second Amended Complaint ¶ 27(m) and (n); Second Proposed Joint Final Pretrial Order at 36-45).

In Count VI of *ProtoComm II,* ProtoComm makes a claim against Novell for intentional interference with existing contractual relations. ProtoComm alleges that Novell knew as of June of 1992 of the existence of the Agreement between Fluent and ProtoComm but that Novell interfered with the Agreement by assisting Fluent in developing streaming technology, eliciting proprietary information from ProtoComm and sharing it with Fluent, and spreading rumors that ProtoComm's technology would be incorporated into Novell's product. These actions of Novell, ProtoComm alleges, enabled Fluent to breach the Agreement with ProtoComm. The actions the ProtoComm refers to in this Count are basically the same actions that form the basis of its claims for fraud against Novell and are essentially the same facts that formed the basis of ProtoComm's claims against Fluent in *ProtoComm I.* (Amended Complaint ¶ ¶ 48, 51, 55, 60, 67-72; Second Amended Complaint ¶ 27(m) and (n), 28, 32, 41-45).

*8 ProtoComm makes a claim for unjust enrichment (Count X) and restitution (Count XI) against Novell in *ProtoComm II.* ProtoComm made similar claims against Fluent in *ProtoComm I;* ProtoComm alleged that Fluent was unjustly enriched by using proprietary information from ProtoComm in the development of its products (Amended Complaint Count V and VI; Joint Legal Issues Supplement at 4) and that while ProtoComm performed under the Agreement, Fluent never performed and took unfair advantage of ProtoComm's performance by working with Novell to develop competitive products. (Joint Legal Issues Supplement at 4-5). In *ProtoComm II,* ProtoComm alleges that Novell was enriched by the use of proprietary information given to Fluent and Novell by ProtoComm (Complaint ¶ ¶ 153-57) and that Novell continues to benefit from the development of a new product between Novell and Fluent based on ProtoComm's proprietary information (Complaint ¶ ¶ 158-167). Again, ProtoComm made almost identical assertions regarding Novell's involvement and financial gain in *ProtoComm I.* (Amended Complaint ¶ 84; Second Amended Complaint ¶ ¶ 47, 54, 83-85).

The third step in determining whether these claims arise from the same cause of action is an inquiry into the similarity of the witnesses and documentation needed to prove the allegations in these two cases. I find that the evidence needed to prove the allegations in *ProtoComm II* would be essentially similar to that of *ProtoComm I.* The witnesses in both cases would include all individuals who had any knowledge of the transactions among ProtoComm, Fluent, and Novell. In *ProtoComm I,* the parties listed over one hundred

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 351605 (E.D.Pa.), 1998-1 Trade Cases P 72,204
(Cite as: Not Reported in F.Supp.)

possible witnesses who could testify as to the nature of the parties' businesses, the development and breakdown of the relationships among the parties, the nature of the video software market, and more. (Second Proposed Joint Final Pretrial Order at 101-188). These witnesses included individuals from ProtoComm, Fluent, and Novell. The lengthy exhibit lists submitted by the parties in *ProtoComm I* illustrate the wide range of documentation relevant to the claims in *ProtoComm I*. Again, these documents cover the nature of the parties' businesses and the relationships and transactions among the parties, including evidence relating to Novell's involvement in these transactions, much of which would be needed to prove the allegations of *ProtoComm II.* (Second Proposed Joint Final Pretrial Order Exs. A and B).

Based on the foregoing comparison of the pleadings of *ProtoComm I* and *ProtoComm II,* I find that the underlying acts complained of, the facts alleged, and consequently the evidence needed to prove these factual allegations are essentially similar and that claim preclusion applies to the claims asserted here. Finally, I turn to address ProtoComm's argument that an exception should be made to the doctrine of claim preclusion in this case because the Court denied it the opportunity to fully amend its complaint in *ProtoComm I.*

### B. Effect of the Partial Denial of Leave to Amend the Complaint in *ProtoComm I*

**\*9** *1. ProtoComm's Argument*

ProtoComm also argues that it could not have raised the claims presented in *ProtoComm II* in *ProtoComm I* because at the urging and as a result of the wrongful conduct of Novell and Fluent, this Court partially denied its motion for leave to amend the complaint in *ProtoComm I* to include claims against Novell and antitrust claims against Fluent and Novell. ProtoComm contends it could have filed its motion to amend the complaint earlier but for Novell's obstructive conduct, including its offer to engage in settlement negotiations in *ProtoComm I* and subsequent attempts to evade the discovery efforts of ProtoComm. In addition, ProtoComm claims that Fluent and Novell argued in opposition to the motion for leave to amend the complaint that while denying the motion would not prejudice ProtoComm, amending the complaint would prejudice Novell by adding it as a party so late in the progression of *ProtoComm I* and would prejudice Fluent by causing

unnecessary delay in recovering on its counterclaims, a position which ProtoComm asserts time revealed to be unfounded. ProtoComm argues that it would be unfair for this Court to have denied it the opportunity to amend its complaint only to have this Court later rule that those claims are barred by claim preclusion. *See Bruszewski v. U.S.,* 181 F.2d 419, 421 (3d Cir.1950) (noting that an exception to claim preclusion may be made in cases in which some overriding consideration of fairness to a litigant dictates a different result in the circumstances of a particular case).

*2. Analysis*

In the December 9, 1994 Order partially denying the motion for leave to amend the complaint, I noted that "ProtoComm admits in its brief that its new claims are not time barred and are viable independent of this action" in concluding that Magistrate Judge Angell's resolution of the motion in her Report and Recommendation was not a dispositive matter. (Document No. 101 at 2 n. 1). I also concluded that Judge Angell's finding that the addition of Novell as a party and the addition of the antitrust claims "would create an entirely different case requiring considerable factual and legal investigation" was supported by the record. (Document No. 101 at 3). ProtoComm argues that these statements are inconsistent with a finding that its claims are now barred by claim preclusion and points to these statements as evidence of the unfairness it would suffer if this Court were to so hold.

I begin by echoing a fellow District Judge's recent quotation of Sir Francis Bacon that "an overspeaking judge is no well-tuned cymbal." [FN8] To the extent that the wording of that Order at the time implied that ProtoComm would be able to maintain a separate lawsuit against Novell and Fluent or now seems inconsistent with my conclusion that the claims in *ProtoComm II* are barred by claim preclusion, I regret any overstatement of my reasoning in denying that motion. The language of that Order, however, was not legally determinative and does not change my conclusion that the events forming the basis for the claims asserted in *ProtoComm I* and *ProtoComm II* are essentially similar so as to form the same cause of action. The December 9, 1994 Order disposed of a motion for leave to amend the complaint, and in deciding to deny the motion, this Court considered factors such as prejudice to the parties and wise use of judicial resources at that stage of the proceedings. The decision of the Court today is made in the context of a motion for summary judgment based on

Not Reported in F.Supp.
Not Reported in F.Supp., 1998 WL 351605 (E.D.Pa.), 1998-1 Trade Cases P 72,204
(Cite as: Not Reported in F.Supp.)

claim preclusion and is made on a more complete record, which better illustrates the similarity of the underlying facts and evidence required to prove the claims in both *ProtoComm I* and *ProtoComm II*.

> FN8. In *United States v. McGann, 951 F.Supp. 372 (E.D.N.Y.1997)*, Judge Glasser had ruled in an earlier opinion that the government's claim for breach of fiduciary duty was barred under the statute of limitation but implied that if the government wanted to make out a claim for breach of fiduciary duty for actions that took place within the statute of limitations, it should so plead. The government moved for leave to amend the complaint three years later, a motion which Judge Glasser denied as untimely. The government then filed a separate complaint alleging breach of fiduciary duty against the same defendant. Judge Glasser used this quote to lament the inconsistency between the earlier implied indication that the government could bring a claim for breach of fiduciary duty and his current decision to hold that claim barred by claim preclusion.

**\*10** Further, this Court has discretion to deny leave to amend the complaint under Federal Rule of Civil Procedure 15(a) if the motion is untimely. Thus, the argument of ProtoComm that it could not have raised these claims earlier because its motion for leave to amend the complaint was denied is without merit. ProtoComm filed its complaint in *ProtoComm I* on January 29, 1993. At that point, all of the alleged events involving Novell and Fluent had taken place except the alleged misrepresentations made by Novell about ProtoComm to venture capitalists in early 1993 and the purchase of Fluent by Novell on July 7, 1993. ProtoComm then waited five and one half months after the acquisition of Fluent by Novell, until December 20, 1993, to file its motion for leave to amend the complaint, almost a year after the litigation had commenced. Although this Court did not enter its Order denying leave to amend until much later, it was based on the reasoning of the Report and Recommendation of Magistrate Judge Angell that was filed on January 27, 1994. Magistrate Judge Angell's Report and Recommendation that the proposed amendments to the complaint were untimely and would have delayed the trial to the prejudice of the parties and the Court was based on the status of the record and case in January of 1994, shortly after ProtoComm's motion was filed.

In addition, ProtoComm ultimately could have appealed from the Order denying its motion for leave to amend, an opportunity it did not take. If ProtoComm believed that the decision to deny its motion for leave to amend the complaint was, as it implies, wrested from this Court through the wrongful conduct of Fluent and Novell, then its remedy was to appeal that decision. It cannot now try to circumvent that decision by pursuing those same claims in this lawsuit. *See Poe v. John Deere Co., 695 F.2d 1103, 1107 (8th Cir.1982)* (" '[I]t is immaterial [to a decision that a claim is barred by claim preclusion] that the plaintiff in the first action sought to prove the acts relied on in the second action and was not permitted to do so because they were not alleged in the complaint and an application to amend the complaint came too late.' ") (quoting the Restatement (Second) of Judgments § 25 comment b (1982)); *McGann, 951 F.Supp. at 379* (observing that the government was "attempting an end run around the denial of its motion to amend its complaint by filing a new one, or as it is occasionally put, attempting to accomplish indirectly what it could not accomplish directly" and held that the second lawsuit was barred by claim preclusion); *In re Dual-Deck Video Cassette Recorder Antitrust Litigation v. Matsushita Electric Industrial Co., 1991 WL 425379, at \*2 (D.Ariz.)* ("A decision denying leave to amend that was based on prejudice to the defendants and dilatoriness in bringing the claims plaintiff sought to add are the sort of grounds that should bar bringing those claims in a later action.")

**\*11** I conclude that my decision that ProtoComm's claims are barred by claim preclusion is not unfair to ProtoComm so as to justify an exception to that doctrine and the policies that underlie it.

## IV. CONCLUSION

Based on the foregoing analysis, I conclude that there is no genuine issue of material fact and that Novell and Fluent have demonstrated that ProtoComm's claims are barred by claim preclusion. Thus, Novell and Fluent are entitled to judgment as a matter of law. Because I find that ProtoComm's claims are barred under the doctrine of claim preclusion, I need not reach defendants' arguments that they are entitled to summary judgment on the merits of those claims.

An appropriate Order follows.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 9
Not Reported in F.Supp., 1998 WL 351605 (E.D.Pa.), 1998-1 Trade Cases P 72,204
**(Cite as: Not Reported in F.Supp.)**

*ORDER*

AND NOW, this 29th day of June, 1998, upon consideration of the motions of defendants Novell, Inc. ("Novell") and Novell Multimedia, Inc. ("Fluent") for summary judgment (Document Nos. 22 and 24 respectively), the response by plaintiff ProtoComm Corp. ("ProtoComm") (Document No. 26), and the replies of defendants thereto (Document Nos. 29 and 30), as well as the supporting memoranda and exhibits submitted by the parties, having found and concluded that there is no genuine issue of material fact, that the claims alleged by ProtoComm against Novell and Fluent are barred by claim preclusion, and that Novell and Fluent are entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56(c), it is hereby accordingly ORDERED that the motions are GRANTED.

JUDGMENT IS HEREBY ENTERED in favor of defendants Novell, Inc. and Novell Multimedia, Inc. and against ProtoComm Corp. on all of the claims of ProtoComm.

This is a final Order.

E.D.Pa.,1998.
Protocomm Corp. v. Novell, Inc.
Not Reported in F.Supp., 1998 WL 351605 (E.D.Pa.), 1998-1 Trade Cases P 72,204

Briefs and Other Related Documents (Back to top)

• 2:94cv07774 (Docket) (Dec. 28, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

DuaneMorris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
WILMINGTON
PRINCETON
LAKE TAHOE

FREDERICK B. ROSNER
DIRECT DIAL: 302.657.4943
E-MAIL: fbrosner@duanemorris.com

www.duanemorris.com

March 12, 2007

**BY ELECTRONIC FILING AND HAND DELIVERY**

The Honorable Joseph J. Farnan, Jr.
United States District Court
for the District of Delaware
844 N. King Street
Room 4124
Wilmington, DE 19801

> Re:    Public Utility District No. 1 of Clark County d/b/a Clark Public Utilities
> v. Kaiser Aluminum & Chemical Corporation, et al.,
> Civil Action No. 05-CV-836 (JJF) (the "Motion to Withdraw the Reference")
>
> Public Utility District No. 1 of Clark County d/b/a Clark Public Utilities
> v. Kaiser Aluminum & Chemical Corporation, et al.,
> Civil Action No. 06-CV-247 (JJF) (the "Appeal")

Honorable Sir:

I write to correct a filing error with respect to the referenced matters.  It appears that on October 3, 2006 my office filed the Reply Brief of Appellant as Docket No. 30 in the Motion to Withdraw the Reference.  The Reply Brief of Appellant instead should have been filed in the Appeal, Civil Action No. 06-cv-247.

To correct the docket, my office has re-filed the Reply Brief of Appellant in the Appeal. Of course, no changes have been made except that the Reply Brief now bears Civil Action No. 06-cv-247.  The foregoing has been consented by opposing counsel.  I apologize for any inconvenience this may have caused.  Courtesy copies of the Reply Brief are enclosed.

Very truly yours,

Frederick B. Rosner

DuaneMorris

The Honorable Joseph J. Farnan
March 12, 2007
Page 2


FBR/nmj
cc:    George H. Williams, Esq. (via e-mail w/ enclosures)
       William A. Wood, Esq. (via e-mail w/ enclosures)
       Tracy C. Temple, Esq. (via e-mail w/ enclosures)
       Daniel J. DeFranceschi, Esq. (via e-mail w/ enclosures)
       Gregory M. Gordon, Esq. (via e-mail w/ enclosures)
       Jason Madron, Esq. (via e-mail w/ enclosures)